L. J. SMITH et al. *v.* T. B. HARDIN et al.

Statute of Frauds — Sale of Land — Assignment of Notes — Contemplation
of Insolvency — Assignment for Benefit of Creditors.
A sale of land in contemplation of insolvency and the assignment of
the purchase-money notes to one creditor with the intent to prefer him
to the exclusion of other creditors operates as an assignment of all the
debtor's property and effects for the benefit of all his creditors, in pro-
portion for their respective demands including those that are future and
contingent.

Land Granted by a Deed — Acceptance — Presumption.
If by the deed a valuable estate is granted, which is of great benefit
to the grantee, the legal presumption is that it was accepted.

Married Women — Surrender of Deed Does not Divest Her of Title — Sub-
sequent Purchaser — Notice.
The deed of Ben Hardin to his daughter passed the legal title to her,
and was binding between the parties. A subsequent purchaser or
creditor, without notice, might avoid it. The statement in the after-
made deed by said Hardin to the husband of his daughter, that "the
land herein conveyed is the same property given to my daughter" was
sufficient to put subsequent purchasers on the inquiry as to the title.
The mere surrender of a deed does not divest a married woman of her
title to land.

APPEAL FROM WASHINGTON CIRCUIT COURT.

February 5, 1867.

OPINION OF THE COURT BY JUDGE PETERS:

Appellees Hardin and wife, in June, 1862, instituted this
action in equity in the Washington Circuit Court against Dr.
R. C. Palmer, who is the father of Mrs. Hardin, and was her
statutory guardian, and others, charging that Palmer was in-
debted to them in a considerable amount as the guardian of Mrs.
Hardin. That he was indebted to them for the hire of her slaves
in several hundred dollars, and in the sum of $400 for money
collected from the executors of the late Ben Hardin, who was her
grandfather, and which he had bequeathed to her.

That they had brought an action in the Washington Circuit
Court against Palmer and his surety for the amount he owed

then as guardian, and had also sued him for the amount he owed them for negro hire, and the legacy paid to him by the executors of Hardin; but that said Palmer had by putting in colorable and pretended defenses to said actions, and at the expiration of the May term of said court before said causes were reached, prevented them from the recovery of judgments on their several demands, whilst he permitted other creditors to recover judgments against him by default, for large amounts, in some of which considerable sums of usury were included, and that said judgments were suffered by said Palmer in order to prefer said creditors, and to enable them to appropriate all his property to the satisfaction of their debts, to the exclusion of the appellees Hardin and wife.

Second. They allege that on the 11th of February, 1862, said R. C. Palmer, with the design and for the purpose of preferring Henry M. Spalding, Levi J. Smith, and H. and A. McElroy over other of his creditors, and in contemplation of insolvency, conveyed a valuable tract of some 600 acres of land in Washington county for the recited consideration of $21,000 to his son, Henry C. Palmer, a young man without the means, either in possession or in property, of paying for the same, and took his several promissory notes for the purchase money, payable at a distant day, in unequal amounts, one for $3,150 corresponding in amount to the alleged indebtedness of the payee therein to Henry M. Spalding; one for $5,000 to correspond with the amount of his alleged indebtedness to Levi J. Smith, and one for $5,300, the amount of his indebtedness to said H. and A. McElroy; that said notes were assigned by said R. C. Palmer to these several persons, with whose debts they were alleged to correspond in amounts, and to whom by the stipulations in the deed from R. C. to H. C. Palmer they were secured by preferred and superior liens on the land conveyed, over the notes for the residue of the purchase money.

Third. They further allege that the late Ben Hardin on the 2d day of July, 1845, conveyed a tract of about 800 acres of land situate in Washington county to R. C. Palmer, including the 600 acres conveyed by him to his son, H. C. Palmer; that the conveyance from Ben Hardin to R. C. Palmer shows on its face that the land therein conveyed had been previously given by said Hardin to his daughter, Mrs. Emily Palmer, the wife of said

R. C. Palmer, and mother of appellee Mary P. Hardin, and that R. C. Palmer was required by the terms of said conveyance, and that he therein stipulated, that if he at any time sold said land, or any part thereof, his estate, at his death, should be bound to pay to the children of Mrs. Emily Palmer, or the survivors of them, $10 per acre, without interest, for the land so sold by him. And claim that R. C. Palmer is bound to them and to H. C. Elliott, and Elizabeth, his wife, the said Elizabeth being a daughter of Mrs. Emily Palmer, deceased, and to said H. C. Palmer, who is her son, all of whom are made defendants to the action, for said $10 per acre for said land, that he is in equity to be held as a trustee for said children. That said Henry M. Spalding has acquired 200 acres of said land conveyed by Ben Hardin from R. C. Palmer, and claims the same as his own. They pray that R. C. Palmer may be required to account to Hardin and wife and Elliott and wife for said land at $10 per acre, or for their respective shares thereof, for which they insist they have a prior lien on the same, and for general relief.

Fourth. Hardin and wife charge that Ray, the surety of R. C. Palmer, in his bond as guardian for Mrs. Hardin, has conveyed his estate to preferred creditors in contemplation of insolvency, and to their exclusion; they allege that said conveyances of R. C. Palmer and Ray operate as transfers of their estate for the benefit of their creditors, and that the debt due to them from Palmer as the guardian of Mrs. Hardin has priority over other debts owning by them.

In August, 1862, appellant Richard Hamilton filed his petition in the Washington Circuit Court against R. C. Palmer and others, alleging that he was a creditor of said Palmer to a large amount, for which he had a judgment, enumerates other judgment creditors of Palmer, showing that he was very largely indebted at the time, refers to his sale of the land to his son, and the assignment of the three notes to Spalding, Smith, and the two McElroys, in charges substantially the same as those made by Hardin and wife on that subject, charges that R. C. Palmer made the sale of the land and the transfer of said notes to prefer said Spalding and others, and in contemplation of insolvency. Charges that said sale and transfers operated as an assignment of the estate for the benefit of all the creditors of R. C. Palmer, and prays the chancellor to take charge and control of the estate,

and distribute the same, or the proceeds thereof, as provided for by an Act approved 10th of March, 1856, entitled: "An act to prevent fraudulent assignments in trust for creditors," etc.

This action was consolidated with that of Hardin and wife against said Palmer and others, and in November, 1863, Palmer filed his answer, in which, after controverting the allegations of Hardin and wife in relation to the character of the defenses set up by him, to their actions in ordinary against him, and denying that his defenses were made for vexation, delay, or any of the purposes charged, to which he refers and makes them a part of his answer to this action, he says in relation to the deed of the late Ben Hardin to himself of the 2d of July, 1845, its true import and effect, he may not understand, but that he had taken the advice of legal men in relation thereto, by whom he had been informed, and he certainly believed, he had the power to sell the land, and could make to the purchaser a good title; but that it was not subject to execution sales for the payment of his debts; that nearly the whole of his property except this land had been taken in execution by his creditors, and for the purpose of paying said debts, and releasing the property thus taken in execution, he made an arrangement with Smith, Spalding, and the McElroys by which they undertook to advance the money to pay said execution creditors, and he was to indemnify them for said advancements; that he had a desire to pay off all his debts, which he believed he would be able to do by a sale of the land; hence he made the sale and executed the deed, therefor, to H. Palmer; denies that he made said sale and conveyance in contemplation of insolvency, but avers that he made them with the belief that he would thereby be enabled to pay all his debts, and that his general creditors would regard the sale as beneficial to them, and would, therefore, approve it.

He states the assignment of the note to Spalding was in consideration of debts for which he was bound as his surety, and which he then assumed to pay, and those to Smith and the McElroys were in consideration in part of his indebtedness to them and for money then advanced by them.

He furthermore says, after these transactions, he found that H. Palmer's health was very rapidly failing, and that there was more difficulty in disposing of his notes for the residue of the purchase money for the land than he anticipated; some of his

creditors seemed to doubt his ability to pay them, and were not willing to take them except at a heavy discount; under these circumstances, he believed his own interest, and that of his creditors, would be promoted by a rescission of the contract with H. C. Palmer, and a reconveyance of the land to himself, as he believed he would be able to sell the land for more than he had sold it to him for, and to a purchaser or purchasers whose notes would be more readily taken by his creditors in discharge of his liabilities, and more advantageously disposed of; for these reasons they canceled the sale, and H. C. Palmer, in May, 1862, conveyed the land to him, and he surrendered up the notes which he had taken for the purchase money to said H. C. Palmer.

On the subject of the conveyance of the land by Ben Hardin to his wife, and afterward to himself, and the effect of said conveyance, he says they are legal questions which he submits to the court.

Henry M. Spalding in his answer states that Wm. Ray drew a bill of exchange on R. C. Palmer on the 30th of October, 1860, for $2,940.40 which he accepted payable at the Commercial Bank at Lebanon, and which he, Spalding, indorsed solely for the accommodation of Palmer to enable him to raise money to discharge a debt, which he owed to the Deposit Bank in Springfield, Ky., the money was raised on the bill, and when it matured it was not paid, and the holder sued the drawer, accepter, and indorser, and recovered judgment against all of them for the amount, upon which execution issued, and was placed in the hands of the sheriff of Washington county, who levied it upon the slaves and other personal property of said Palmer, of value sufficient to satisfy the same, and then the agreement was made in relation to the sale of the land to Henry Palmer, which was consummated, and a note executed for a part of the consideration by said H. Palmer to R. C. Palmer for the amount of principal and interest of said bill of exchange with the cost of the suit, which note R. C. Palmer assigned to him, and he thereupon, and in consideration thereof, assumed to pay the full amount of said judgment to said bank, said note to be secured by a preferred lien on the land, and that the sale of the land, the execution and transfer of the note to him, and his assumption of the payment of the debt to the bank, were simultaneous acts, and R. C. Palmer was discharged from all liability to the bank for said debt. He

avers that R. C. Palmer had only a contingent interest in the land sold to Henry Palmer which was not subject to execution, and could not be reached by creditors, that the sale was a voluntary application of property to the payment of his debts by said R. C. Palmer, which could not otherwise have been subjected thereto, and consequently .cannot be within the .inhibition of the Statute of 1856, *supra.* He makes the deed from Ben Hardin to R. C. Palmer part of his answer, controverts the claim of Hardin and wife, and insists that Hamilton by a levy of the execution in his favor on Palmer's property, which he himself was active in procuring, cannot alter said levy, have a sale of the same property by the chancellor, and a distribution of the proceeds thereof *pro rata.*

The defendants the McElroys allege that R. C. Palmer owed them a debt of $1,449.67, and informed them he would sell said land to H. C. Palmer, and would take his note for $5,500 in part consideration of the land with a preferred lien thereon for its payment, and assign it to them, if they would pay off and discharge debts which he then owed, which when added to their demands against him would amount to said sum of $5,500. That they, and one Covington, had reduced their debts to judgments, upon which executions had issued, and been levied on the slaves and other personalty, and a tract of land of R. C. Palmer, which had been sold by virtue of said executions, and they had purchased it at less than its real value, and by the assignment of said notes to them they had given up the land to Palmer, and released their liens acquired by the levy of their executions on said slaves and other personal property, and that said Hamilton had since their agreement with Palmer to take said note caused his execution against R. C. Palmer to be levied on the property upon which their executions had been levied, whereby he waived his right, as they insist, to controvert their right to said note, and to call in question the transaction by which they acquired said note. And deny that the sale of the land to H. C. Palmer, and assignment of his note to them for $5,500 part of the price of the land to them were inhibited by the Act of 1856, *supra.*

As to the mortgage of Ray they admit their debt was a subsisting debt at the date thereof, and was not created simultaneously with the execution of said mortgage.

Ray in his answer admits he made the mortgage to secure the

debts therein named, but denies that he made it in contemplation of insolvency, controverts the claim of Hardin and wife on R. C. Palmer as late guardian of Mrs. Hardin, and refers to and adopts Palmer's answer to that branch of their case as his.

H. C. Palmer answers very briefly, denies that he made the purchase of the land with any fraudulent design on his part, and says if his codefendant, R. C. Palmer, made the sale in contemplation of insolvency, he had no knowledge of it; admits he reconveyed the land to his father, and says the deed shows fully on its face the purpose for which it was executed, and prays that the court shall direct the surrender to him of all his notes executed for the purchase price of the land if it should be adjudged that said sale was made in contemplation of insolvency, etc.

L. J. Smith's answer is substantially the same with that of McElroys' except that he sets out his own debt, and the debts he paid for said R. C. Palmer, footing up with the interest to the 18th of April, 1862, when the note on H. C. Palmer was assigned to him, making the indebtedness of R. C. Palmer to him on that day $5,055.81.

The settlement was made with the McElroys on the same day.

Other creditors of R. C. Palmer were made defendants, some of whom claim by reason of the levy of their executions prior liens on the property levied on, and as to the land as such of his estate as they do not claim to have prior liens pray the chancellor to take control of the same, and distribute the proceeds *pro rata* amongst the creditors.

On the 14th of May, 1864, Spalding, Smith, and the McElroys filed jointly an amended answer, alleging that their several notes assigned to them by R. C. Palmer, on Henry Palmer, had matured; that said Henry Palmer had in the meantime died, having first made his will, by which he had devised all his estate of any kind to his father in trust for the benefit of his brother, Robert C. Palmer, jr. That the life estate of R. C. Palmer, sr., in the land had been sold under executions in favor of the Bank of Kentucky, and of the Commercial Bank against said Palmer, and purchased by Edward A. Graves; that Henry C. Elliott and Elizabeth Elliott, his wife, and the plaintiffs Hardin and wife, Mrs. Elliott and Mrs. Hardin being the daughters and only surviving children of Mrs. Emily Palmer, who was the wife of R. C. Palmer, set up some claim to said land, but deny that they

have any just claim to any part thereof, and for the purpose of litigating and settling their claims, whatever they may be, they make their answer a cross-petition against them, and also against R. C. Palmer, and pray for a personal judgment against him, and also against him as personal representative of H. C. Palmer, deceased, and pray for a sale of the land for the payment of their notes, all of which they file, and make parts of their answer.

Hardin and wife answer the cross-petition, controvert the claim of plaintiffs to a prior lien, refer to their petition and make it a part of their answer, and repeat that they have a lien on said land superior to all others for all their demands, and pray for an enforcement of the same.

Elliott and wife on the 5th of April, 1865, filed their answer to said cross-petition, in which they allege that they have an interest in said land derived in the following manner: That Ben Hardin, the father of Mrs. Emily Palmer, conveyed the land to her on the 16th day of August, 1840, and delivered the deed to her on the day of its date, she then being in the possession thereof up to the time of her death, which occurred in November, 1845; that on the 2d day of July, 1845, although said R. C. Palmer knew that Hardin had conveyed the land to his wife, on that day took a conveyance for the same land from Hardin to himself, and that before R. C. Palmer conveyed the land to H. C. Palmer, and before said notes of the latter were assigned to Spalding, Smith, and the McElroys, they had actual notice in writing which they had caused to be served on them of the conveyance by Ben Hardin to his daughter Mrs. Palmer. That they were willing that R. C. Palmer should occupy and use the land during his life; but as he had attempted to sell it, they were either compelled to assert their right, or abandon it, and they, therefore, pray for a partition of the land, and that their share may be set apart to them, and to that end they make their answer a cross-petition, and make the deed from Hardin and wife to Mrs. Emily Hardin a part of the same.

Spalding and others filed an amended cross-petition on the 22d of April, 1865, in which they allege that Mrs. Emily Hardin at her death left four children, Mrs. Elizabeth Elliott, Mrs. Mary B. Hardin, Ben H. Palmer, and H. C. Palmer; that Ben H. Palmer died after he arrived at twenty-one years of age, childless, never having been married, and intestate, and that all his estate

passed to his father, R. C. Palmer; that H. C. Palmer died after he was twenty-one years of age, testate, as before stated; that Hardin and wife had released and conveyed all their interest in said land to R. C. Palmer, on the 15th of March, 1862, and make said conveyance part of their amended petition. That R. C. Palmer had been in possession of said land for many years before the death of his wife, and pray for the enforcement of their alleged lien.

On the 13th of September, 1864, R. C. Palmer filed an original petition *quia timet* in said court, against H. C. Elliott and wife, in which he alleges that he had the legal title to, and possession of, the land conveyed to him by Ben Hardin and wife, which deed he makes a part of his petition, and alleges that he has been in possession of said land ever since the date thereof; that Elliott and wife are asserting a claim to said land adverse to him, but that they have no title whatever thereto; that from information he charges that Mrs. Elliott would be willing to release any claim she might have to said land, and would do so, if it could be done without the consent of her husband, but that he refuses to join her in a deed of release to him, and he, therefore, prays that said defendants be ordered and adjudged to release all their pretended claim to said land to him.

To this petition Elliott and wife file their answer, in which they admit the plaintiff is in possession of the land, but deny that they claim an interest in said land without right, and state that they are entitled to one-fourth of said land by virtue of the conveyance of Ben Hardin to Mrs. Emily Palmer, of which R. C. Palmer had actual notice when the conveyance of the same land was made to him by his grantor; that soon after the date of the deed to him, Mrs. Emily Palmer died, leaving five children, who have heretofore been named; that her son Ben H. Palmer died after he was twenty-one years old, intestate and childless, and that by the terms of the deed to their mother his interest in the land passed to his surviving brother and sisters; that H. C. Palmer made a will before his death by which he disposed of his interest in said land, and they suppose it passed to his devisees; they deny that Mrs. Elliott is willing to release to plaintiff her interest in said land; but they pray for partition of said lands, and that their share may be set apart to them by metes and bounds, etc. This action was consolidated and heard with the other actions herein referred to.

This somewhat elaborate statement of the pleadings seemed to be required to understand the issues, and the multifarious interests involved in the controversy.

On the hearing, the court below adjudged that the deed from R. C. to H. C. Palmer and the assignment of the notes of the latter to Spalding, Smith, and the McElroys were made in contemplation of insolvency, and with the intent to prefer said assignees to the exclusion of other creditors, and that said deed operated as an assignment of all the property and effects of said R. C. Palmer, owned by him at its date, to the benefit of his creditors in proportion to their respective demands, including those that are future and contingent, except that Hardin and wife are adjudged to have a prior lien for a portion of their demands.

It was adjudged that the title to the land passed to Mrs. Emily Palmer by the deed of her father, Ben Hardin, to her August, 1840, and that nothing passed by his subsequent deed to R. C. Palmer for the same land, and at the death of Mrs. Palmer the land passed to her children, subject to the life estate of her husband; that as Ben H. Palmer died after he attained twenty-one years, intestate, and unmarried, his undivided fourth part of said land passed by the law of descents to his father, and Hardin and wife having conveyed their undivided fourth to him, he thereby became entitled to one undivided half of said land in fee. And as tenant by the curtesy, he is entitled to a life estate in the whole tract, and his moiety in fee, and his life estate in the other moiety were ordered to be sold for the benefit of his creditors. That as H. C. Palmer was the owner of one-fourth of said land, subject to the life estate of his father, and at his death was indebted to Spalding, Smith, and the McElroys as evidenced by his several notes executed to his father, and by him assigned to them, dated the 11th of February, 1862, and due two years thereafter, carrying interest from date, a judgment was rendered in favor of said assignees, respectively, for the sums due them, to be levied of assets against his personal representative, and it was also adjudged that they had a prior lien on his reversionary interest in one-fourth of said land to secure the payment of said notes, and that interest was ordered to be sold to pay whatever may be due and unpaid on said notes.

To Mrs. Elizabeth Elliott was adjudged one undivided fourth

of the land, excluding the part sold by R. C. Palmer to H. M. Spalding subject to the life estate of said Palmer, to be set apart and possession to be surrendered to her at the death of her father.

It was also adjudged that Hardin and wife by their deed to R. C. Palmer ratified the deed from Ben Hardin and wife to him, of July, 1845, and are entitled by virtue of the last named deed to $10 per acre for an undivided fourth of said tract, including the part conveyed to Spalding, and as the amount would not be due them until the death of R. C. Palmer, that branch of the case was referred to the master to ascertain the present value of that future interest.

The residue of the cause was referred to the master to ascertain and report various matters necessary to a final and proper adjustment of the various interests involved, including the other branch of the case in which Hardin and wife are interested, the details of which are not complained of and need not now be particularly noticed. And the cause was continued for his report. Spalding's administrators, Smith, the McElroys, and R. C. Palmer, prayed an appeal, and the parties having agreed that the judgment should be considered final as to the particular matters complained of, an appeal was granted by the court below, and the case is now here for revision.

The first objection taken to the judgment by Spalding, etc., is that Mrs. Elliott's claim to an undivided one-fourth of the land conveyed by R. C. to H. C. Palmer is sustained; and in support of that position it is insisted that the deed from Ben Hardin to Mrs. Emily Palmer was never accepted by her, and if accepted was afterward surrendered.

By the deed a valuable estate was granted to her, and as it was greatly to her benefit, the legal presumption is that she did accept it. And in addition to this legal presumption Mrs. Riley proves that in August, 1840, her sister, Mrs. Palmer, was delivered of a child at her father's house near Bardstown, and in a few days thereafter her father delivered to her the deed dated 16th of August, 1840, for the land in controversy, that Mrs. Palmer claimed the land under said deed for years after its date, and until shortly before her death in 1845, resisting repeated importunities of her husband to divest herself of the title by joining him in a conveyance of it to a third person who would afterward convey it to him; it is furthermore proved that Ben Hardin

not only said to Mrs. Riley that he had made the deed of 1845 to Dr. Palmer for the land, that his daughter might die in peace, but he said to Dr. Hickman that Dr. Palmer wanted the title made to himself, and he conveyed the land to him to gratify him. This evidence is not objected to, and shows the circumstances under which the deed was made. The original deed to Mrs. Palmer was carefully preserved by her, and instead of being destroyed by Ben Hardin, or Mrs. Palmer, when the deed was made to Dr. Palmer, it was given in charge to Mrs. Riley by her father to be preserved for the benefit of Mrs. Palmer's children.

To repeal this presumption and rebut the direct evidence, the statements of Mrs. Palmer made to Dr. Smith, Mrs. Ray, and Ben Thompson are relied upon. Even waiving the objection to the competency of this evidence, still these statements must be regarded as being induced by the opposition manifested by her husband to the conveyance made to her instead of himself, and his importunities to her to have it changed; we cannot think that such evidence, even if competent, should be permitted to outweigh the stern facts proved on the other side. The deed of Ben Hardin to his daughter passed the legal title to her, and for all purposes was binding as between the parties. A *subsequent* purchaser without notice and creditors might have avoided it, and if it be conceded that *the after-made* deed to Dr. Palmer in which it is merely stated that the land therein conveyed is the same land which he *had previously given* to his daughter, Mrs. Palmer, might not be constructive notice that he had conveyed said land to her, it was certainly sufficient to put subsequent purchasers on the inquiry as to how the title was, but be that as it may, it is alleged by Elliott and wife that appellants, Spalding, Smith, and McElroy, had actual notice of the deed to Mrs. Palmer before the sale to H. C. Palmer, and the assignment of the notes to them which they do not deny, and it is also proved. Nor would the mere surrender of the deed by Mrs. Palmer divest her of the title to the land. A married woman cannot be divested of her title to land in that mode. We, therefore, concur with the court below in the opinion that Mrs. Elliott was entitled to an undivided fourth of the land, excluding that part sold to Spalding, after the death of her father.

The interest of Mrs. Hardin in the land was precisely the same as that of Mrs. Elliott, but by joining with her husband in the

deed of the 15th of March, 1862, they released to Dr. Palmer all claim to the land under the deed of Ben Hardin to Mrs. Palmer, and elected to claim the interest they had under the deed to Dr. Palmer; they parted with a certain and available claim and more valuable than the interest they reserved, and the arrangement was advantageous to Palmer and creditors. We, therefore, see no reason for disturbing the judgment in favor of Hardin and wife. But it is objected to the judgment that it subjected the estate of Dr. Palmer to the operation of the *Statute of* 1856, *supra,* and that presents the next question to be disposed of.

The sale was made to a young, unmarried man, the son of the grantor, wholly without the means of payment of any part of the purchase money. The business of farming seems to have been foreign to his pursuits, for he was at the time of the sale a captain in the Federal army, and no reason is shown for the purchase by him; and in about three months thereafter, he reconveyed the land to his father. Judgments for large amounts were, soon after this conveyance was made, rendered against the grantor, and his indebtedness amounted to more than his means would pay. At the time and before the conveyance was made, he was indebted to Smith, and the McElroys and Spalding were bound as his surety for no inconsiderable sum. Under these circumstances the land was sold; to these creditors, notes for a part of the purchase money were assigned, with preferred liens on the land expressly reserved in the deed, to secure their payment, and in about three months thereafter the land reconveyed to the debtor, with these preferred liens provided for in the deed to the debtor. Nor will it do to say the debts were created simultaneously with the conveyance to H. C. Palmer and the assignments; a part at least of the debts to Smith and the McElroys was pre-existing, and Spalding was bound as R. C. Palmer's surety then for a large amount.

From the foregoing facts the conclusion cannot be escaped that the sale and transfer of the notes were mere devices to prefer these creditors to the exclusion of others, and were made in contemplation of insolvency. Nor is there any reason for first refunding the money advanced by these creditors in payment of debts of Palmer. They can only occupy the place of the creditors whose debts they have paid; besides, they must have known when they made the advancements the purposes of R. C. Palmer in making the conveyance to his son.

It is a mistake to assume that R. C. Palmer had no vendible interest in the land, or such interest therein as could be subjected to the payment of his debts; he certainly had a life estate in the whole tract, and a fee in the one-fourth which he inherited from his son, Ben H. Palmer.

Wherefore, the judgment is affirmed.

Judge Hardin did not sit in this case.

*Broun,* for Appellants.

*Barnett and Lindsey,* for Appellees.